IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID WAYNE MEARIS,<br>Register No. 03809-078, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. H-19-0528 |
| v. | § | |
| | § | |
| DETENTION OFFICER GUILLORY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Wayne Mearis (Register No. 03809-078; former SPN #01823344) filed a handwritten civil rights complaint under 42 U.S.C. § 1983 ("Complaint") (Docket Entry No. 1), alleging that he was mistreated by a detention officer while confined at the Harris County Jail, which is operated by the Harris County Sheriff's Office ("HCSO"). At the court's request Mearis supplemented his pleadings with Plaintiff's More Definite Statement ("Plaintiff's MDS") (Docket Entry No. 11). Pending before the court is Defendant Detention Officer Danica Guillory's Motion for Summary Judgment ("Defendant's MSJ") (Docket Entry No. 24). Mearis has not filed a response and his time to do so has expired. After considering all of the pleadings, the exhibits, and the applicable law, the court will grant Defendant's MSJ and will dismiss this action for the reasons explained below.

# I. __Background__

Mearis was booked into the Harris County Jail (the "Jail") in Houston, Texas, on September 21, 2017, following his arrest for compelling prostitution, aggravated assault, aggravated kidnapping, and human trafficking in Harris County Cause Nos. 1494314, 1511369, 1565096, and 1565097.[1] Although these charges remain pending against him, the court takes judicial notice that Mearis is now in federal custody awaiting sentencing after a jury in this district found him guilty of multiple counts of sex trafficking of minors.[2]

## A. __Plaintiff's Allegations__

Mearis executed the pending Complaint on February 8, 2019, while confined as a pretrial detainee at the Jail.[3] Mearis alleges that on December 23, 2018, he "re-injured" his lower spine where he had "two previous failed back surgeries."[4] Mearis explains that he had surgery in 2012 and 2013 to repair a "bulging disc" that was pressing on a nerve in his back, causing pain.[5] Mearis adds that

---

[1]Plaintiff's MDS, Docket Entry No. 11, p. 2. For purposes of identification, all page numbers reference the pagination imprinted by the court's electronic filing system, CM/ECF.

[2]See United States v. David Wayne Mearis, Crim. No. 4:19-cr-00524-01 (S.D. Tex. Oct. 18, 2019) (Docket Entry No. 79).

[3]Complaint, Docket Entry No. 1, pp. 1-4.

[4]Id. at 2.

[5]Plaintiff's MDS, Docket Entry No. 11, p. 3.

this condition first arose in 2012, when he was using a "jumping jack" at work and his "back gave out."[6]

Mearis states that he aggravated his back when he "slipped" after taking an "awkward step" in his cell, causing him to feel "a lot more pain than normal."[7] Mearis alleges he asked the "officer in the picket" to call the Clinic because he could not walk and was "barely able to move."[8] Mearis contends that the defendant, Officer Danica Guillory, refused to allow him to be taken to the Clinic and ignored his complaints of pain.[9] Mearis alleges he "lay on the ground for 3½ hours, in severe pain" until the night shift sergeant came on duty.[10] Mearis contends that the Clinic should have been called "immediately" so that he could get some pain medication.[11]

Mearis alleges that on January 27, 2019, Officer Guillory filed a "100% false incident report against [him]" in retaliation for grievances that he had filed against her.[12] Mearis states that disciplinary charges were filed against him for making

---

[6]Id. at 3.

[7]Id. at 4.

[8]Complaint, Docket Entry No. 1, p. 2.

[9]Id.

[10]Id.

[11]Plaintiff's MDS, Docket Entry No. 11, p. 5.

[12]Complaint, Docket Entry No. 1, pp. 2-3.

"unauthorized contact with staff" after he "cursed at her" and "participated in a group demonstration."[13] As a result of those charges Mearis lost privileges for 20 days.[14] He was also moved to a different location within the Jail, although he remained within the "maximum security" area of the facility and was not assigned to administrative segregation.[15]

Mearis contends that Officer Guillory violated his rights by delaying his access to medical care and by filing a false disciplinary charge against him for improper retaliatory reasons.[16] Invoking 42 U.S.C. § 1983, he seeks $400,000.00 in compensatory and punitive damages.[17]

## B.  Defendant's MSJ and Evidence

Officer Guillory moves for summary judgment, arguing that she did not violate Mearis's constitutional rights in any way and that

---

[13]Plaintiff's MDS, Docket Entry No. 11, pp. 8-9.

[14]Id. at 8.

[15]Id. at 9.

[16]Complaint, Docket Entry No. 1, pp. 2-3.

[17]Id. at 3.  Mearis includes a claim for injunctive relief in the form of pain medication.  See id.  Because he is no longer in custody at the Harris County Jail, the court concludes that this claim is moot.  See Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002); see also Cooper v. Sheriff, Lubbock County, Texas, 929 F.2d 1078, 1084 (5th Cir. 1991) (holding that an inmate's transfer from county jail to state prison rendered moot his claims for injunctive relief).  Alternatively, the claim is without merit for reasons set forth in more detail below.

she is entitled to qualified immunity.[18]  In support of this argument, Guillory provides a detailed affidavit along with several policies at the Jail, which were applicable to Mearis during the time relevant to his Complaint.[19]  She also provides her most recent performance evaluation, in which she earned the highest possible ranking in several job categories, including knowledge of job policies and quality of work, in addition to praise from her supervisor for her efforts to "maintain Pod standards according to the rules of the job."[20]  Guillory also provides grievance records and documents associated with the Inmate Offense Report containing the disciplinary charges that she filed against Mearis on January 27, 2019.[21]

Officer Guillory explains that during the time in question, she was assigned to work as a picket officer supervising approximately 100 "high risk" inmates in a "pod (or cell block)" from a central control booth.[22]  From this position, Guillory could

---

[18]Defendant's MSJ, Docket Entry No. 24, pp. 1-20.

[19]Affidavit of Detention Officer Danica Guillory ("Guillory Affidavit"), Exhibit 1 to Defendant's MSJ, Docket Entry No. 24-1, pp. 1-7; Policies, Exhibits 2-8 to Guillory Affidavit, Docket Entry No. 24-1, pp. 13-69.

[20]Harris County Sheriff's Office Employee Evaluation, Exhibit 1 to Guillory Affidavit, Docket Entry No. 24-1, pp. 10-11.

[21]Grievances & Grievance Appeal, Exhibits 9, 11-12 to Guillory Affidavit, Docket Entry No. 24-1, pp. 70-81 and pp. 85-90; Inmate Offense Report, Exhibit 10 to Guillory Affidavit, Docket Entry No. 24-1, pp. 82-84.

[22]Guillory Affidavit, Docket Entry No. 24-1, p. 2.

"speak with the inmates through an intercom, see them through windows and monitors, and open and close doors."[23] Although there are typically two officers assigned to a pod, Guillory notes that at times she is the only officer present to ensure that it is safe and to handle inmate requests, among other duties, such as conducting a regular "count" while maintaining other security protocols.[24]

Officer Guillory states that Mearis was considered an "extremely high risk inmate" for purposes of custodial classification.[25] She provides records documenting Mearis's lengthy record of engaging in disruptive conduct while he was housed at the Jail between January 26, 2016, and May 27, 2019, which includes 38 documented disciplinary infractions.[26] Although some of these charges appear to have been dismissed for unspecified reasons, Mearis was found guilty in many of assaulting other inmates, threatening staff, using abusive or obscene language, and other

---

[23]Id.

[24]Id. at 2-3, 6 (referencing Exhibit 2, HCSO Policy CJC-204, Inmate Count, Docket Entry No. 24-1, p. 16, requiring staff to enter the cellblock and "physically count each inmate to ensure the proper number of inmates is present" while evaluating each inmate's "health and physical wellbeing").

[25]Id. at 3.

[26]Current Disciplinary History for David Wayne Mearis (listing numerous infractions), attached to Business Records Affidavit of Captain Ronny Taylor ("Taylor Affidavit")—Exhibit 3 to Defendant's MSJ, Docket Entry No. 24-3, pp. 66-68.

types of misconduct.[27]  Because he was considered an extremely high risk to others, Mearis was required to wear a purple arm band, signaling to detention officers that he was subject to "the most stringent security protocols."[28]

Officer Guillory states that she is not aware of any request for medical care by Mearis on December 23, 2018, but notes that he may be complaining about an incident that took place on December 12, 2018.[29]  On that occasion, Guillory worked a double shift (16 hours) in the pod where Mearis was confined.[30]  Near the end of the shift Mearis began banging on the window and cursing at her, saying that his back hurt.[31]  He then "dramatically laid down on the floor."[32]  After Guillory spoke with Mearis over the intercom, she contacted the Clinic and relayed his symptoms.[33]  Guillory was told by a provider who was familiar with Mearis and his medical history that the Clinic was full at that moment and that he would have to wait.[34]  When Guillory advised Mearis of this

---

[27]Id.

[28]Guillory Affidavit, Docket Entry No. 24-1, p. 3.

[29]Id. at 5.

[30]Id.

[31]Id.

[32]Id.

[33]Id.

[34]Id.

he cursed loudly at her.[35]  Although Mearis stayed on the floor for

a while, Officer Guillory observed that he appeared able to walk

normally and that he continued to yell profanity at her.[36]

According to Jail policies provided by Officer Guillory,

detention officers assigned to a pod are required to watch the

inmates on a continuous basis, among other duties, meaning that

they are not allowed to leave them unsupervised.[37]  Other policies

provide that inmates with a purple arm band are required to wear

both arm and leg restraints and must be escorted at all times when

outside their designated housing area.[38]  In particular, inmates

with purple arm bands are not allowed to go to the Clinic unless

escorted and secured with handcuffs and/or leg irons.[39]

Officer Guillory explains that when working in an area of the

Jail alone she can only send an inmate with a purple arm band to

the Clinic after the Clinic confirms that it has available space

and accepts the inmate for an appointment.[40]  Once the Clinic

accepts an appointment, she contacts a "rover" for assistance to

---

[35]Id.

[36]Id.

[37]Id. at 2-3 (reciting portions of HCSO Policy CJC-220, Inmate
Observation, Exhibit 6), and 4.

[38]Id. at 3-4 (pointing to HCSO Policy CJC-219, Separation
Policy, Exhibit 5; and HCSO Policy CJC-239, Restraints, Exhibit 7).

[39]Id. at 4 (citing HCSO Policy CJC-709, Medical Holdover Post
Orders, Exhibit 8).

[40]Id.

escort the inmate to the Clinic.[41]  Under no circumstances is she allowed to let an inmate with a purple arm band go to the Clinic alone and she is also not permitted to leave her post and abandon the other inmates to bring that inmate to the Clinic herself.[42]

Officer Guillory avers that she would never deny or delay an inmate access to the Clinic or prevent him from receiving emergency care.[43] In Guillory's experience, inmates are always seen promptly at the Clinic, but she acknowledges that like any hospital or other clinical setting an inmate's wait time is determined by factors that are out of Guillory's control, such as staffing, how many other patients need medical care, and the severity of those medical needs.[44]  Guillory also notes that, based on her own personal observations, Mearis was often "extremely aggressive when he is brought to the Clinic," and that he has threatened nursing staff with profane language.[45]  As a result of his "combative" and "abusive" tendencies, Mearis often required "two male rovers" to escort him to the Clinic.[46]

---

[41] Id.

[42] Id.

[43] Id.

[44] Id.

[45] Id.

[46] Id.

Officer Guillory reports that her shift ended soon after she contacted the Clinic on Mearis's behalf on December 12, 2018.[47] When the new shift arrived, additional officers were available to transport Mearis to the Clinic.[48] Medical records confirm that Mearis was seen in the Clinic at 10:55 p.m. on December 12, 2018.[49] He received an injection of toradol and given a prescription for narcotic pain medication.[50] He was scheduled for a follow-up visit to treat his complaints of chronic back pain.[51]

Mearis returned to the Clinic for further evaluation on December 14, 2018, and for an x-ray of his lumbar spine.[52] The x-ray disclosed "no definite evidence of acute osseous injury" other than "moderately advanced degenerative changes at the L5/S1 interspace," which appeared similar to changes noted in a previous x-ray study conducted on September 22, 2017.[53] As a result of the x-ray, medical personnel discontinued Mearis's prescription for narcotic pain medication.[54] He returned to the Clinic again on

---

[47]Id. at 5.

[48]Id.

[49]HCSO Health Services Provider Notes, Docket Entry No. 25, pp. 2-7.

[50]Id. at 4-5.

[51]Id. at 5.

[52]Id. at 14-15.

[53]Id. at 18.

[54]Id. at 17.

December 26, 2018, where it was noted that he "[a]mbulated to triage without difficulty" and was "able to sit in [a] chair without any [signs or symptoms] of discomfort."[55] Mearis was offered another appointment in the Clinic on January 10, 2019, but he refused.[56]

On December 21, 2018, Mearis filed an Inmate Complaint Form against Officer Guillory for delaying his access to the clinic for three hours and thirty minutes on December 12, 2018.[57] Sergeant Templeton investigated and, after speaking with both Mearis and Officer Guillory, concluded that the grievance was "[u]nfounded."[58] After Mearis appealed, a three-member panel of the Grievance Appeal Board reviewed the supporting documentation from the investigation and also concluded that the grievance was "unfounded."[59] In the written findings that issued on January 15, 2019, the Grievance Appeal Board also advised Officer Guillory that, in the future, she should "always generate a report when an inmate uses profanity towards her."[60]

---

[55]Id. at 21.

[56]Id. at 22-23.

[57]Inmate Complaint Form 210090, attached to Taylor Affidavit—Exhibit 3 to Defendant's MSJ, Docket Entry No. 24-3, pp. 60-61.

[58]Grievance Receipt, attached to Taylor Affidavit—Exhibit 3 to Defendant's MSJ, Docket Entry No. 24-3, p. 59.

[59]Inmate Grievance Board Grievance Appeal #210155, attached to Taylor Affidavit—Exhibit 3 to Defendant's MSJ, Docket Entry No. 24-3, pp. 53-54.

[60]Id. at 54.

Regarding the incident that occurred on January 27, 2019, Officer Guillory acknowledges that she filed a disciplinary report against Mearis, but explains that she did so when he disrupted the count and instigated ten other inmates to do the same while screaming profanity at her.[61] The details and names of the other inmates who participated in the aggressive, profanity-laced group demonstration are set forth in the Inmate Offense Report submitted by Officer Guillory.[62] Other officers were called to respond to the incident, in which one of the inmates threatened to douse Officer Guillory with kerosene and light her on fire.[63] Noting that Mearis had shown aggression towards her on "numerous occasions" and that he "daily" interfered with the count while encouraging other inmates to join in the disruptive behavior, Officer Guillory asked that he be "relocated to a different housing area" out of concern for her personal safety.[64]

Disciplinary records reflect that on February 6, 2019, Mearis was found guilty of participating in a group demonstration in connection with the incident that occurred on January 27, 2019.[65]

---

[61]Guillory Affidavit, Docket Entry No. 24-1, pp. 6-7.

[62]Inmate Offense Report 2019-5970-701, Docket Entry No. 24-3, pp. 64-65.

[63]Id. at 64.

[64]Id.

[65]Current Disciplinary History for David Wayne Mearis (listing offenses that occurred on January 27, 2019, in Case Numbers 2019-5970-1200 and 2019-5971-1200), attached to Taylor Affidavit—Exhibit 3 to Defendant's MSJ, Docket Entry No. 24-3, p. 66.

Mearis, who was also found guilty of making unauthorized contact with staff on that occasion, lost visitation and commissary privileges for 20 days as a result of the group demonstration.[66] Officer Guillory emphasizes that, although she frequently endured abuse from Mearis and his comrades, she filed the disciplinary charges because "the tone that day was particularly threatening" and his conduct was putting the safety of the pod at risk, and not because of any intent to retaliate.[67]

## II.  **Standard of Review**

Defendant's MSJ is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under this rule a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986) (quoting and discussing former Rule 56(c)).  A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  Id.

----

[66]Id.

[67]Guillory Affidavit, Docket Entry No. 24-1, p. 7.

In deciding a summary judgment motion the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010) (internal quotation marks and citation omitted). However, the non-movant "cannot rest on [his] pleadings" where qualified immunity is asserted. Bazan ex rel. Bazan v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001) (emphasis in original). Nor can the non-movant avoid summary judgment simply by presenting "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." Jones v. Lowndes County, Mississippi, 678 F.3d 344, 348 (5th Cir. 2012) (quoting TIG Insurance Co. v. Sedgwick James of Washington, 276 F.3d 754, 759 (5th Cir. 2002)); see also Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence). If the movant demonstrates an "absence of evidentiary support in the record for the nonmovant's case," the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial." Sanchez v. Young County, Texas, 866 F.3d 274, 279 (5th Cir. 2017) (per curiam) (citing Cuadra v. Houston Independent School Dist., 626 F.3d 808, 812 (5th Cir. 2010)); see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

The plaintiff proceeds _pro se_ in this case. Courts construe pleadings filed by _pro se_ litigants under a less stringent standard than those drafted by lawyers. _See_ Haines v. Kerner, 92 S. Ct. 594, 596 (1972) (per curiam); _see also_ Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) ("A document filed _pro se_ is 'to be liberally construed[.]'") (quoting Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)). Nevertheless, "_pro se_ parties must still brief the issues and reasonably comply with [federal procedural rules]." Grant v. Cuellar, 59 F.3d 523, 524 (5th Cir. 1995) (citations omitted). The traditional standard of leniency toward _pro se_ pleadings does not excuse a _pro se_ plaintiff from the "burden of opposing summary judgment through the use of competent summary judgment evidence." Malcolm v. Vicksburg Warren School District Board of Trustees, 709 F. App'x 243, 246 (5th Cir. 2017) (per curiam) (citing Davis v. Fernandez, 798 F.3d 290, 293 (5th Cir. 2015) ("Of course, this is not to say that _pro se_ plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do.")).

## III.  Discussion

### A.  Qualified Immunity

Officer Guillory argues that Mearis fails to establish that any constitutional violation occurred and that she is entitled to qualified immunity from liability for claims against her.[68] "The

---

[68]Defendant's MSJ, Docket Entry No. 24, pp. 15-19.

doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982)).  This is an "exacting standard," City and County of San Francisco, California v. Sheehan, 135 S. Ct. 1765, 1774 (2015), that "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Malley v. Briggs, 106 S. Ct. 1092, 1096 (1986)).

A plaintiff seeking to overcome qualified immunity must satisfy a two-prong inquiry by showing:  "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (citation omitted).  If the plaintiff satisfies both prongs of this inquiry, the court then asks whether qualified immunity is nevertheless appropriate because the official's actions were objectively reasonable in light of law that was clearly established when the disputed action occurred. See Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010).  "Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury."  Id. (citation omitted).  "An official's actions must be judged in light of the circumstances

that confronted him, without the benefit of hindsight." Id. (citation omitted); see also Lampkin v. City of Nacogdoches, 7 F.3d 430, 435 (5th Cir. 1993) (viewing whether defendants' actions were objectively reasonable based on the "facts available to them").

As this standard reflects, "[a] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." King v. Handorf, 821 F.3d 650, 653-54 (5th Cir. 2016) (internal quotation marks and citations omitted). "'The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct.'" Id. at 654 (quoting Gates v. Texas Dep't of Protective and Regulatory Services, 537 F.3d 404, 419 (5th Cir. 2008)). "'To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present "absolute proof," but must offer more than "mere allegations."'" Id. (quoting Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009)).

## B. The Claim of Delayed Access to Medical Care

Mearis alleges that Officer Guillory ignored his complaints of back pain by failing to promptly contact the Clinic and delayed him from receiving medical care for over three hours.[69] As a pretrial detainee, Mearis's claim concerning the denial of prompt medical

---

[69]Complaint, Docket Entry No. 1, p. 2.

care falls under the Due Process Clause of the Fourteenth Amendment, which requires the state to provide for the "basic human needs" of pretrial detainees, including the right to adequate medical care. <u>Hare v. City of Corinth, Mississippi,</u> 74 F.3d 633, 639 (5th Cir. 1996) (en banc); <u>see also Thompson v. Upshur County, Texas,</u> 245 F.3d 447, 457 (5th Cir. 2001) ("[P]retrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials."). To prevail under these circumstances, a plaintiff must demonstrate that the defendants "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference." <u>Hare,</u> 74 F.3d at 650.

The deliberate indifference standard is an "extremely high" one to meet. <u>Domino v. Texas Dep't of Criminal Justice,</u> 239 F.3d 752, 756 (5th Cir. 2001). A showing of deliberate indifference requires the prisoner to demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." <u>Gobert v. Caldwell,</u> 463 F.3d 339, 346 (5th Cir. 2006) (citation and internal quotation marks omitted). In this context, the Fifth Circuit has emphasized that allegations of delay in medical care only violate the Constitution "if there has been deliberate indifference that *results in substantial harm.*" <u>Rogers v.</u>

Boatright, 709 F.3d 403, 410 (5th Cir. 2013) (emphasis in original) (quoting Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006)); see also Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

The record in this case shows that Officer Guillory contacted the Clinic promptly after Mearis complained of back pain, but was told that the Clinic was full and that Mearis, who was classified as an extreme high-risk inmate with a purple arm band, would have to wait.[70] Shortly after she contacted the Clinic, Guillory's shift ended.[71] Mearis was seen in the Clinic that evening and given pain medication,[72] but x-rays revealed no injury other than a pre-existing degenerative condition.[73]

The Fifth Circuit has observed that "[c]ontinuing back pain is unpleasant. Its existence does not, however, in and of itself demonstrate that a constitutional violation occurred." Mayweather v. Foti, 958 F.2d 91, 91 (5th Cir. 1992). Because Mearis was treated in the Clinic, where he received pain medication and x-rays to evaluate his condition, he has not shown that he was denied adequate medical care for his complaints of back pain. More importantly, Mearis has not established that Officer Guillory acted with deliberate indifference to a serious medical need or that he

---

[70]Guillory Affidavit, Docket Entry No. 24-1, p. 5.

[71]Id.

[72]HCSO Health Services Provider Notes, Docket Entry No. 25, pp. 2-7.

[73]Id. at 17-18.

-19-

suffered substantial harm as the result of any delay. Accordingly, Mearis has not demonstrated that Officer Guillory violated his constitutional rights. Officer Guillory is therefore entitled to qualified immunity from his claim that she delayed his access to medical care, and her motion for summary judgment on this issue is granted.

## C. The Retaliation Claim

Mearis contends that Guillory filed a false disciplinary case against him on January 27, 2019, because he had filed grievances against her previously.[74] "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998); see also Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006). "Causation requires a showing that but for the retaliatory motive the complained of incident . . . would not have occurred." Id. (internal quotation marks and citations omitted).

The Fifth Circuit has emphasized that prison officials must be given "wide latitude" in the management of inmates and has cautioned district courts to "carefully scrutinize" retaliation claims:

---

[74]Complaint, Docket Entry No. 1, pp. 2-3.

> The prospect of endless claims of retaliation on the part
> of inmates would disrupt prison officials in the
> discharge of their most basic duties. Claims of retalia-
> tion must therefore be regarded with skepticism, lest
> federal courts embroil themselves in every disciplinary
> act that occurs in state penal institutions.

Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting Adams
v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)). An inmate must allege
more than his personal belief that he is the victim of retaliation.
See Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999) (citing
Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997)). To
demonstrate that a defendant acted with intent to retaliate, a
prisoner must produce "direct evidence of motivation" or, at the
very least, he must "allege a chronology of events from which
retaliation may plausibly be inferred." Woods, 60 F.3d at 1166.

The record reflects that Mearis filed a grievance against
Officer Guillory for delaying access to medical care for his
complaints of back pain on December 12, 2018.[75] That grievance was
determined to be unfounded by the Inmate Grievance Board on
January 15, 2019.[76] The record reflects that Mearis filed one other
grievance against Officer Guillory on December 23, 2018, because
she was rude to him when he complained that his dinner tray was
"missing cornbread and cookies."[77]

---

[75]Inmate Complaint Form 210090, attached to Taylor Affidavit—
Exhibit 3 to Defendant's MSJ, Docket Entry No. 24-3, pp. 60-61.

[76]Inmate Grievance Board Grievance Appeal #210155, attached to
Taylor Affidavit—Exhibit 3 to Defendant's MSJ, Docket Entry
No. 24-3, pp. 53-54.

[77]Inmate Grievance #67715, Exhibit 12 to Guillory Affidavit,
Docket Entry No 24-1, pp. 89-90.

Officer Guillory denies having any intent to retaliate and explains that she filed the disciplinary charges against Mearis on January 27, 2019, because the threatening nature of his actions in concert with multiple other inmates was putting the safety of the pod at risk.[78] Guillory's explanation is supported by the detailed Inmate Offense Report, which describes flagrant and abusive misconduct by Mearis, who instigated as many as ten other inmates to engage in a profanity laced disruption of the required count.[79] That Mearis engaged in this misconduct while assigned to a pod holding as many as 100 high-risk inmates further supports the conclusion that disciplinary action was warranted on this occasion. Based on this record, Mearis has not established the requisite retaliatory intent or demonstrated that, but for an improper motive on Officer Guillory's part, he would not have been charged with a disciplinary offense.

Mearis has not filed a response, and the conclusory allegations found in his pleadings are not sufficient to establish a retaliation claim or overcome the defense of qualified immunity asserted in the defendant's properly supported motion for summary judgment.[80] See Woods, 60 F.3d at 1166; see also Eason v. Thaler,

---

[78]Guillory Affidavit, Docket Entry No. 24-1, p. 7.

[79]Inmate Offense Report 2019-5970-701, attached to Taylor Affidavit—Exhibit 3 to Defendant's MSJ, Docket Entry No. 24-3, pp. 64-65.

[80]The certificate of service confirms that Defendant's MSJ was sent to Mearis at the address of record that he has provided for the federal detention facility where Mearis was confined at the time Defendant's MSJ was filed. See Change of Address, Docket Entry No. 21, p. 1; Defendant's MSJ, Docket Entry No. 24, p. 20.

73 F.3d 1322, 1325 (5th Cir. 1996) ("[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment."). Because Mearis has not otherwise demonstrated that Officer Guillory filed false charges against him for retaliatory reasons, he has not shown that his constitutional rights were violated. Absent a showing that a constitutional violation occurred, Officer Guillory is entitled to qualified immunity and summary judgment on Mearis's retaliation claim against her.

Because Mearis has not established that he has a valid claim for relief under 42 U.S.C. § 1983, this action will be dismissed.

## IV.  **Conclusion and Order**

Accordingly, the court **ORDERS** as follows:

1.  Detention Officer Guillory's Motion for Summary Judgment (Docket Entry No. 24) is **GRANTED**, and this action will be dismissed with prejudice.

2.  A separate final judgment will issue.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this the 27th day of March, 2020.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE